## Julia A. Murray, Defendant in Error, v. Stella Werner and Charles A. Werner, Plaintiffs in Error.

## Gen. No. 19,688.

1. FALSE IMPRISONMENT, § 20*—*when declaration sufficient.* Averments of declaration examined and *held* to lay foundation for the recovery of damages for malice and oppressiveness in acts of defendants and for exemplary damages.

2. TRIAL, § 268*—*when refusal to submit interrogatories error.* In an action for false imprisonment against a husband and wife it is error to refuse to submit interrogatories as follows:

1. "Question: In any acts that you may find the defendant [husband] did, were those acts done by him maliciously, oppressively, or with wanton disregard of the rights of the plaintiff?"

2. "Question: In any acts that you may find the defendant [wife] did, were those acts done by her maliciously, oppressively, or with a wanton disregard of the rights of the plaintiff?"

3. TRIAL, § 268*—*when refusal to submit special interrogatory error.* In an action for false imprisonment, where the evidence raises the question as to whether the officer arrested plaintiff on his own accord in his official capacity as a police officer, it is error to refuse to submit an interrogatory covering that question, even though an interrogatory was submitted as to whether defendant directed, ordered, requested or induced the officer to take plaintiff into custody.

4. WITNESSES, § 224*—*when exclusion of question on cross-examination tending to impeach testimony error.* Exclusion, on cross-examination, of certain questions showing that on a specified occasion the witness had made statements contrary to his testimony in the case, *held* error.

Error to the Superior Court of Cook county; the Hon. JOSEPH H. FITCH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Reversed and remanded. Opinion filed May 11, 1915.

SAMUEL J. ANDALMAN, for plaintiff in error Charles A. Werner; JACOB COHEN, of counsel.

McARDLE & McARDLE, for defendant in error.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE SMITH delivered the opinion of the court.

An action was brought in the Superior Court of Cook county against Stella Werner and Charles A. Werner, defendants, by Julia A. Murray for false imprisonment on September 3, 1909. The case went to trial upon a general issue filed by each of the defendants below, resulting in a general verdict finding the defendants guilty and assessing the plaintiff's damages in the sum of fifteen hundred dollars. Two special findings were also returned by the jury. This writ of error is prosecuted by Charles A. Werner to reverse the judgment.

Plaintiff below, Julia A. Murray, a woman of about forty-eight years of age, was engaged in general housework. On September 3, 1909, she was employed to work at the house of Mrs. Werner and a Mrs. Florsheim on Vincennes avenue near Forty-third street in Chicago. About the time that the plaintiff quit work and went home, Mrs. Werner discovered that a diamond ring belonging to her had been taken from where she last placed it, and it could not be found. She thereupon telephoned to a police station that a larceny had been committed, and Brown, a police officer, was sent from the police station to the Drexel Café at Thirty-ninth street and Cottage Grove avenue to see defendants in relation to the larceny. The officer met the defendants in the café and Mrs. Werner told him that her ring had disappeared, and the facts in connection with its disappearance, and that she wished to recover it, and he said he would go and see Miss Murray, plaintiff below, and try to get the ring.

Officer Brown testified that he found the plaintiff at Cottage Grove avenue and Twenty-ninth street, and, being unable to get the ring from her, took her to Thirty-ninth street and Cottage Grove avenue, and, leaving her in charge of another officer, went into the café and had a second interview with the defendants, in which he told them that he had been unable to re-

cover the ring, and that he had plaintiff outside of the café, and wanted to know what he should do with her; and, according to his testimony, the defendants thereupon told him to take her to the station and lock her up. Officer Brown, after taking the plaintiff to the house where she had been working and from which it was claimed she took the missing ring, and, after giving the plaintiff an opportunity to search for the ring in the house, took her to the police station, where she was confined until the next morning.

The declaration avers that the defendants with force and arms assaulted the plaintiff and seized and laid hold of her while she was clothed in wet garments and with great force and violence pulled and dragged the plaintiff and forced and compelled her in such garments to go from and out of a certain dwelling house into and along certain public streets to a street car and then forced her to leave the street car and stand in her wet garments on the street for a long space of time, and then forced her to enter another street car and ride to a police station and there imprisoned her for an hour, and then forced and compelled her to go to the residence of the defendants and forcibly detained her therein for two hours, and abused, maligned and maltreated her therein, and then forced and compelled her to go forth from said residence and to enter a patrol wagon in which they forcibly carried her to a police station and thrust her into a vile and loathsome cell then occupied by a drunken colored woman, and unlawfully and with force and against her will detained her in said cell until the next day, and on the said next day compelled her to go to a branch of the Municipal Court of Chicago and then charged her with the crime of larceny of a diamond ring valued at one hundred and fifty dollars.

Clearly the averments of the declaration lay a foundation for the recovery of damages for malice and oppressiveness in the acts of the defendants and for

punitive or exemplary damages. The trial court so construed the declaration and submitted that question to the jury in its instructions to them, and yet refused to submit the two following interrogatories, requested by plaintiff in error, to the jury:

1. "Question: In any acts that you may find the defendant, Charles A. Werner, did, were those acts done by him maliciously, oppressively, or with wanton disregard of the rights of the plaintiff?"

2. "Question: In any acts that you may find the defendant, Stella Werner, did, were those acts done by her maliciously, oppressively, or with a wanton disregard of the rights of the plaintiff?"

In refusing to submit these interrogatories, we think the court erred, for if there had been an affirmative answer to one question and a negative answer to the other question, the jury could not assess punitive damages against both defendants, as they evidently did. *McCarthy v. De Armit,* 99 Pa. St. 63; *Lake Shore & M. S. R. Co. v. Prentice,* 147 U. S. 101-107; *Pardridge v. Brady,* 7 Ill. App. 639; *Wanner v. Winters,* 33 Ill. App. 149, 150; *Titcomb v. James,* 57 Ill. App. 296-307; *Douglas v. Hoffman,* 72 Ill. App. 110-113; *Levin v. Cazier,* 146 Ill. App. 188.

The evidence in the case clearly raises the question as to whether Officer Brown arrested the plaintiff on his own accord in his official capacity as a police officer of the city of Chicago. The trial judge correctly regarded this question as in the case, and submitted it to the jury in the twentieth instruction given. It was a vital and material question for the defense. But the court refused to submit to the jury the following special interrogatory on that question:

"Question: Did the witness Brown arrest the plaintiff on his own accord in his official capacity as a police officer of the city of Chicago?"

This question relates to an ultimate and controlling fact in the case. If answered in the affirmative, it

would control a general verdict in favor of the plaintiff. The question was not covered by or embraced in the question submitted, namely:

"Question: Did the defendant, Charles A. Werner, direct, order, request or induce the witness Brown to take the plaintiff in custody?"

The latter question was in the alternative and though answered in the affirmative, as it was by the jury, the answer did not negative the question whether Brown arrested the plaintiff on his own accord in his official capacity as a police officer of the city of Chicago. Although the plaintiff in error did direct, order, request or induce Brown to take the plaintiff in custody, Brown was not in law bound to obey the direction, order or request of plaintiff in error, having no warrant, and may have acted on his own judgment and for himself in his official capacity.

It was reversible error to refuse to submit the above questions to the jury.

Brown testified on direct examination that at the second interview between him and the defendants in the Drexel Café both defendants told him to take the plaintiff to the station. On cross-examination he said that he had seen plaintiff in error several times since the arrest, and in the month of September, 1911, he called at Werner's house at his request. In response to questions, he denied making several statements in the conversation had there at that time, and was then asked:

"Didn't you at that time in the presence of Mr. and Mrs. Werner and Mrs. Mandel, then say to Mr. Werner, 'I don't see why they should sue you. If there is anybody she can sue in the matter she ought to sue me. I am the one who made the arrest?"

The court sustained an objection to this question. We think this was error. If the witness made such a statement, it tended to impeach his testimony that both defendants ordered him to take the plaintiff to

the station.   The court had just prior to this ruling properly allowed the defendant to cross-examine Brown about other parts of the conversation which occurred between him and the plaintiff in error at this interview.   It is always proper cross-examination to ask a witness if on a specified occasion he made a statement contrary to his testimony in the case.   This was particularly pertinent and important in this case where the contention of the plaintiff was that the witness Brown arrested the plaintiff at the behest of the defendant, plaintiff in error, without any warrant.

Other rulings on evidence are claimed to be erroneous, but it is unnecessary for us to pass upon them. The judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*