## Paul Christiansen v. William Graver Tank Works.

### Gen. No. 12,319.

1. ASSUMED RISK—*when doctrine of, applies.* Where the danger was obvious and apparent, and the evidence showed that the plaintiff, a servant of the defendant, was entirely familiar with the situation and such danger, the doctrine of assumed risk applies.

2. SISTER STATE—*when law of, governs personal injury case.* Where the accident in question happened in a sister state, the rights, liabilities and duties of the parties are governed by the law of that state.

3. ARGUMENT OF COUNSEL—*when limitation upon, proper.* It is not an abuse of discretion for the court to limit the arguments of counsel to forty-five minutes in an action for personal injuries where there was little conflict as to the material facts of the case.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1905. Affirmed. Opinion filed April 10, 1906. Rehearing denied April 20, 1906.

**Statement by the Court.** This is an appeal by the plaintiff from a judgment of the Superior Court in an action on the case brought by him against appellee for alleged negligence of appellee causing the loss of appellant's right hand and a portion of his arm.

Appellant was in the employment of appellee as a helper to the operator in charge of a large punching machine, owned and operated by appellee, and run by steam power. It was used for punching rivet holes in heavy steel plates. In some manner the plaintiff, appellant, got his hand caught and crushed between two cog-wheels of the machine, on December 5, 1900.

The machine consisted of a large casting, about four feet high, ten to twenty-eight inches thick and something over three feet in length, east and west, with the punch proper at the west end, and the gearing at the east end. This gearing consisted of a small closed pinion at the east end of the machine and about thirty inches from the ground, and a large cog-wheel meshing into it. The pinion was on a shaft which extended about three and one-half feet east

of the east end of the machine. The cog-wheel was forty inches in diameter and directly above the pinion. East of the pinion and on the same shaft were two small belt pulleys by which the power was transmitted to the shaft, and still east of these was a large balance or fly wheel.

West of the punch was a table of steel construction two or three feet wide and thirty or forty feet long, running north and south at right angles with the main body of the punch. The top of the table was about on a level with the jaws of the punch. The steel plates were placed on the table and fastened in the proper position, and by the rolling or movable top of the table were passed through the jaws of the punch. This was done by the operator of the punch while standing on the west side of the table, the helper at the same time standing on the east side of the table immediately south of the punch.

The plaintiff was twenty-eight years of age at the time of the accident. There is some controversy in the evidence as to the length of time he had worked in defendant's shop. There is evidence tending to show that he had worked there a year ending in 1896, during which time he worked for several weeks on a punching machine. He began work again in the shop in the fall of 1900. According to the plaintiff's testimony he had worked on this machine about five days immediately preceding the accident, and had been working in the shop about ten days. All the other witnesses state that he had been working in the shop seven weeks prior to the accident, and on this particular punch not less than three or four weeks. The time book of the shop supports the testimony of the witnesses to this effect.

During the five days that the plaintiff admits he worked as a helper on this punch, they had been punching a double row of holes in the end of each plate. They punched about ten plates per day. A lubricant was used when punching the holes to keep the punch from heating. It was the plaintiff's duty to apply the lubricant. When punching the second row of holes on the same end, it was necessary to wipe off this lubricant in order that the second

row of holes might be marked on the iron or steel with a slate pencil, using the pattern. It was the plaintiff's duty to wipe off the lubricant. It was his duty also to oil the bearings of the machine.

The testimony tends to show that the plaintiff often put sand on the plate in order to clean it more quickly, and that after wiping off the plate just prior to the accident, the plaintiff turned and struck the waste which he had used against a ten-inch board running north and south which shielded the workmen from the pinion, presumably to knock out the sand, and the waste was caught in the mesh between the cog-wheel and the pinion and his hand was drawn in. The plaintiff denies that he knocked the waste against the board.

At the close of the trial the jury rendered a verdict for the defendant, and judgment was entered on the verdict.

WING & WING and ELA, GROVER & GRAVES, for appellant.

LACKNER, BUTZ & MILLER, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

There were six counts in the declaration. The first three counts averred in various ways the negligence of the defendant in properly protecting the cog-wheels and making them reasonably safe; and in the second count it is averred that the defendant was negligent in failing to warn plaintiff of the danger from the cog-wheels, which danger it is averred was known to the defendant and unknown to the plaintiff.

The fourth count alleges · neglect of duty on the part of the defendant in allowing the floor near the punch to become unsafe and dangerous in that it was oily, greasy and slippery, whereby the plaintiff slipped and fell and his hand was caught, etc.

The fifth count avers the duty of the defendant to provide a safe place for the plaintiff to work, and a violation.

of that duty as in the fourth count, and that the lights provided were insufficient, and the space in which plaintiff was compelled to stand was cramped and insufficient.

The sixth count alleges that the defendant carelessly, improperly and negligently conducted its business and the running of the punch and that by reason thereof plaintiff was caught in the cog-wheels of the machine and his right arm was crushed.

The evidence in the record shows that immediately west of the pinion and between it and the place where plaintiff stood while performing his work was the ten-inch board mentioned in the statement preceding this opinion. The lower edge of this board ran over the top of the shaft and was two and one-half inches below the point at which the large cog-wheel and the closed pinion meshed together. The pinion was also from fifteen to eighteen inches north of the most northerly place at which a man could possibly stand, owing to the formation of the base of the punch, so that the workman was shielded from the pinion by the ten-inch board and by the heavy castings which formed the body of the punch. A rise in the floor to the west of the ten-inch board, and a shelf parallel to and below the board, tended to prevent a close approach to the board itself. An upright board extended from the upper edge of the ten-inch board at a point opposite the large cog-wheel to some distance above the highest point of that wheel to protect the workmen from the wheel. It is admitted in argument that there was a space of two and one-half feet between the edge of the steel plate when fastened to the table and the horizontal ten-inch board.

The plaintiff testified that during most of the operation of the punch Barrion, the operator under whom he was working, stood on the west side of the table. When, however, they had to punch the second row of holes, Barrion would come around to the east side of the table to mark with the pattern where the holes should be punched. After he came around it was plaintiff's duty " to get out of there and leave him in there, because the place was so very narrow and when he thought it was good enough so he could

mark it, he says: 'that is all right, now you leave me in there,' and I stepped back like and turned kind of around to get out of his way, and when I done that some ways or another I lost my balance and before I knew anything about it the little cog-wheel had my arm pulled nearly off." He further said he could not tell whether he lost his balance before or after he got the waste in the cog.

Two witnesses on behalf of the defendant testified that plaintiff flipped or knocked the waste up against the lower edge of the ten-inch board which separated the plaintiff from the cogs, and while he was so doing the accident happened. The plaintiff denied this.

Upon a careful study of the evidence we are of the opinion that it would be practically impossible for the accident to happen in the manner stated by the plaintiff. By losing his balance and falling there would be no possible way for him, while falling, to get his hand up under the ten-inch board and over near the meshing of the cogs. We think the theory is more reasonable that plaintiff was engaged in knocking the waste up against the lower edge of the board and that in so doing he caused some portion of the waste to come in contact with the pinion and it was drawn into the mesh of the cogs and his hand with it before he let go the waste. Whether or not defendant was guilty of negligence was for the jury under the instructions of the court, and we see no reason to set aside the judgment and verdict on the merits of the case. The negligence of the defendant alleged in the declaration is not shown to have caused the injury. Further, the plaintiff must be held to have assumed the risk of the service. The danger was obvious and apparent, and the evidence shows that plaintiff was entirely familiar with the situation and the danger. Hollingsworth v. C. I. & L. Ry. Co., 65 N. E. 750; Wabash R. R. Co. v. Ray, Admr., 152 Ind. 392; Rietman v. Stolte, 120 Ind. 314; Ames, Admr., v. L. S. & M. S. Ry. Co., 135 Ind. 363.

It is urged in behalf of plaintiff that the court erred in nearly all of the thirty-four instructions given at the request of the defendant.

It is justly urged on behalf of appellant that the courts

Christiansen v. William Graver Tank Works.

of this state have often criticised and condemned the giving of a mass of instructions to the jury where much less than half of the instructions given in this case were considered. With this complaint and criticism in this case we are in entire sympathy. We can see no possible reason for such a multitude of instructions as were asked and given in this case. It tends doubtless to befog the jury, and it imposes a vast amount of unnecessary labor upon the courts. We have examined the instructions given with care in the light of the objections made to them and the authorities cited, and we find no reversible error in them. It is impossible for us within any reasonable limits to discuss the instructions objected to, and therefore we must content ourselves by expressing our general conclusion upon the whole series.

The point is made on behalf of appellant that the law of Illinois and not the law of Indiana governs the case, and the instructions complained of are all erroneous under the Illinois authorities.

We do not think this point is well taken. The accident happened in Indiana where the plaintiff was employed, and in our opinion the rights and liabilities and duties of the parties are governed by the laws of Indiana. Hanna v. S. T. R. Co., 41 Ill. App. 116; Great W. T. Co. v. Stubbs, 55 Ill. App. 210; C. & N. W. R. R. Co. v. Tuite, 44 Ill. App. 535; Herrick v. The Minn. & St. L. Ry. Co., 31 Minn. 11.

The trial court limited the arguments to the jury to forty-five minutes on each side. It is urged that this was improper. There was little conflict as to material facts in the case. We see no reason why the evidence could not be fully discussed before the jury in the time limited. . It was in the reasonable discretion of the court to fix the time for argument, and we do not think there was an abuse of the discretion.

Appellant also assigns error upon the rulings of the court in receiving and excluding evidence. We have examined the rulings objected to with care and we find no material or reversible error in them.

The judgment of the Superior Court is accordingly affirmed.                                                    *Affirmed.*