[No. 13233. Department Two. May 9, 1916.]

HANDLEY INVESTMENT COMPANY, *Appellant*, v.
J. D. TRENHOLME, *Respondent*.[1]

LIMITATION OF ACTIONS—STOCK—UNPAID SUBSCRIPTIONS — CALL —
DUE DATE. A cause of action upon an unpaid stock subscription of
a solvent corporation, call for which was made payable at a future
date, accrues and the statute of limitations commences to run from
the date the call was due and payable, and not from the date of the
call.

CORPORATIONS—STOCK SUBSCRIPTION—FRAUD — PURCHASE OF PROP-
ERTY. An allegation of fraud, inducing a subscription to the capital
stock of a corporation organized for the purpose of purchasing cer-
tain real estate, is not sustained where the preponderance of the evi·
dence was to the effect that the property was acquired at its then
market value.

Appeal from a judgment of the superior court for King
county, Ralston, J., entered June 30, 1915, dismissing an
action to recover upon an unpaid stock subscription, tried
to the court. Reversed.

*Byers & Byers*, for appellant.
*Kerr & McCord*, for respondent.

MAIN, J.—This action was brought by a corporation
against the defendant, one of its stockholders, for the pur-
pose of recovering the balance due upon a stock subscription
contract. The defendant admitted the subscription, and that
only the sum stated in the complaint had been paid thereon,
and affirmatively pleaded that the contract was induced by
fraud. The cause was tried to the court without a jury, and
resulted in a judgment of dismissal. From this judgment,
the plaintiff appeals.

The facts are these: The Handley Investment Company,
a corporation, was organized on or about December 6, 1906,

[1] Reported in 157 Pac. 472.

with a capital stock of $100,000, divided into 1,000 shares of the par value of $100 per share. Soon after the organization of the company, its entire capital stock was subscribed for by some twenty-five or thirty persons. The respondent's subscription was for fifty shares, or $5,000 worth of the stock. The subscription contract provided for payment "subject to the call of the trustees."

The corporation was organized for the purpose of acquiring a certain tract of land in the city of Seattle, located on Hubbell Way, Union street, and Terry avenue. The corporation acquired this land for the price of $90,000, paying thereon $55,000 in cash, and the balance to be due in two equal payments, due, respectively, in one and two years. During the month of November, 1907, the board of trustees made a call for 22½ per cent of the amount of the subscription. This was for the purpose of meeting the payment due that year. In response to this call, the respondent paid only 2½ per cent. On November 8 or 9, 1908, the board of trustees made a call of 22½ per cent of the subscription, this being the balance due thereon, for the purpose of meeting the payments due upon the property for that year. The respondent refused to make any payment in response to this call. This action was brought for the purpose of recovering the balance due upon the contract. This would include all of the call for the year 1907, except the 2½ per cent paid, and the balance due under the call for 1908, and interest thereon, the former amount being for $1,000, and the latter for $1,125. The call made on the 8th or 9th of November, 1908, required that the payments due thereon be made December 12, 1908. The complaint in the action was filed in the office of the clerk of the superior court on November 11, 1914.

The first question is whether the statute of limitations had run against the right to maintain the action. From the facts stated, it will be observed that the last call was made on the 8th or 9th day of November, 1908; but the payments required under that call were not due until December 12, 1908.

If the date for the starting of the statute of limitations is the date of the call, then a few days more than six years had elapsed prior to the filing of the complaint, and the action would be barred. If the statute was not set in motion until December 12, 1908, or the time when the payments were to be made, then the complaint was filed approximately one month before the six years' limitation had expired. This refers, of course, only to the call made during the year 1908. As to the call made during the year 1907, no further mention need be made, for as to the amount due upon that call, the action was about one year tardy.

It is a general, if not a universal, rule that the statute of limitations does not begin to run prior to the time when an action can be maintained. In this respect there can be no difference in principle when the limitation statute is invoked against an action brought upon a contract of subscription for the capital stock of a corporation from that of any other character of action. In 2 Clark & Marshall, Private Corporations, § 490, it is said:

"The statute necessarily commences to run, in the absence of special circumstances, as soon as the right to maintain an action accrues, and not before. If a subscription is payable immediately, without any necessity for a call, or if it is payable on a day certain, the statute begins to run at once, or from the day when it became payable, as the case may be."

The generally accepted doctrine seems to be that the statute of limitations begins to run upon a subscription for stock only after a call has been made and is due. 4 Thompson, Corporations (2d ed.), § 3881; 1 Cook, Corporations (7th ed.), § 195. In the authority last cited, after referring to certain decisions which held that the statute of limitations would run after the time when a call became possible, even though it was not made, the author observes:

"But the better rule, and the one supported by the weight of authority, is that the statute of limitations begins to run on a subscription for stock only after a call has been made and is due."

It is held in Iowa, in *Great Western Tel. Co. v. Purdy*, 83 Iowa 430, 50 N. W. 45, that the statute runs from the time when the call became possible, and not from the date when the amounts demanded by the call became due. So far as we are informed, that is now the only state supporting that doctrine. A like view was entertained, however, in some of the earlier decisions in Pennsylvania; but in *Cook v. Carpenter*, 212 Pa. St. 165, 61 Atl. 799, 108 Am. St. 854, 1 L. R. A. (N. S.) 900, the court of last resort in that state, after reviewing its previous holdings, adopted the view that the statute of limitations does not begin to run until after a call has been made. A like view is entertained by the supreme court of the United States (*Great Western Tel. Co. v. Purdy*, 162 U. S. 329), except when it is reviewing the statute of limitations of a state in which the action is brought, and which has been construed by the highest court of that particular state differently. In such a case, the supreme court of the United States follows the construction given by the state court. The decision of the United States supreme court, therefore, in affirming the Iowa supreme court (*Great Western Tel. Co. v. Purdy, supra*) is not an authority for the general proposition that the statute begins to run from the time when the call became possible. When the United States supreme court is reviewing the judgments of subordinate Federal courts, and is unaffected by the decisions of the highest court of the state construing the statute in which the action arose, that court adopts a view similar to that contained in the excerpt quoted from 1 Cook, Corporations, *supra.*

The rule that the statute does not begin to run until the call has been made and is due seems reasonable. Prior to the making of the call, the contract is contingent. The balance due upon the subscription contract may or may not be called for, depending upon the necessities of the company. If the business prospers, no further payments might be needed. If further payments are required, they are subject

to the call of the trustees. Until a call has been made and is due, it is reasonably plain that the corporation cannot maintain an action upon the contract. If an action cannot be maintained upon a contract until after a call has been made and is due, then the statute of limitations would not be set in motion until that time.

It should be remembered that the Handley Investment Company in bringing this suit is a solvent corporation acting through its board of trustees. The rule as to when an unpaid stock subscription is due and payable when the corporation is insolvent and in the hands of a receiver or trustee will be found in other decisions of this court not necessary here to review.

The next question is whether the contract of subscription was induced by fraud. The trial court made no finding upon this subject. While it does not appear very clearly from the record, it yet seems apparent that the trial court was of the opinion that the statute of limitations barred the action in its entirety, and, for that reason, entered a judgment of dismissal. Assuming, but not deciding, that if the property taken over by the corporation at $90,000 was acquired at a price materially above its market value, that this fact, taken in connection with the other circumstances, constituted a fraud inhering in the respondent's contract of subscription, inquiry will be directed to whether the property, at the time of the transfer to the corporation, was worth substantially $90,000. Upon this question the evidence is conflicting. The burden was upon the respondent to establish fraud, if it existed. After giving careful consideration to all the evidence upon this question, we are of the opinion that the evidence not only fails to preponderate in favor of the contention that the value of the property was materially less than $90,000 at the time it was acquired by the corporation, but that it preponderates in supporting the position that, at the time the property was acquired by the corporation, it was worth upon the market, under the then market conditions, $90,000.

It is not necessary to review the circumstances which the respondent contends constituted fraud, since if the property was acquired by the corporation at a value not then excessive, the respondent could not well be defrauded. The trial court was in error in holding that the action could not be maintained for the $1,125 and interest thereon, due under the call made during the year 1908.

The judgment will be reversed, and the cause remanded with direction to enter a judgment in accordance with this opinion.

MORRIS, C. J., PARKER, HOLCOMB, and BAUSMAN, JJ., concur.